James Lawrence BADURA, Jr.,
Appellant (Defendant),

v.

STATE of Wyoming, Appellee (Plaintiff).

No. 91–268.

Supreme Court of Wyoming.

June 5, 1992.

Leonard D. Munker, State Public Defender, Deborah Cornia, Appellate Counsel, and Erin A. McIntyre, Asst. Public Defender, Public Defender Program, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., and Barbara L. Boyer, Sr. Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., THOMAS, CARDINE and GOLDEN, JJ., and PRICE, District Judge.

URBIGKIT, Chief Justice.

We review a criminal defendant's claim that the trial court failed to follow statutorily required procedures in ordering restitution included in his felony sentence following a guilty plea.

Appellant, James Lawrence Badura, Jr. (Badura), contends the trial court failed to comply with governing statutes in imposing restitution as a part of his sentence, in that: if inquiry had been made into his ability to pay, the trial court would then have been compelled to find Badura did not have the means to pay the ordered restitution. He also claims the trial court failed to make a proper determination of the amount of restitution required as a term of the probationary sentence. Appellate challenge comes after revocation was entered resulting in a penal confinement sentence.[1]

After being honorably discharged from the United States Navy on June 2, 1989, Badura lived at the home owned by his mother and father in Clark, Wyoming. His sister and brother-in-law, John and Janatt Pulczinski, had also lived there, but moved to Minnesota shortly before the incidents giving rise to this case. When they left for Minnesota, they left blank check books, cars and other personal property at the Clark residence. While he lived there, appellant had access to the blank checks and the automobiles. He negotiated over

---

1. Propriety of the process used for revocation is not presented by this appeal. See W.R.Cr.P. 33, now W.R.Cr.P. 39 (effective March 24, 1992).

$3,000 worth of those checks by tracing his brother-in-law's signature. He also used, and damaged, two of the automobiles owned by the Pulczinskis.

Badura pled guilty to forgery[2] at his arraignment held on September 12, 1990, and from that point forward it was clear he would pay restitution for his crime.[3] After a presentence report was prepared, he was sentenced on January 30, 1991 to a term of imprisonment of one to three years in the Wyoming State Penitentiary. Sentence was suspended and a probationary sentence was granted, conditioned upon payment of restitution at $500 per month.

At his sentencing hearing, Badura acknowledged he would pay restitution of approximately $3,000 on the forged checks and also $2,500 for the damage he caused to the vehicles. Although stating some disagreement with the amount claimed by his brother-in-law for damages to the motor vehicles, he admitted owing just over $3,000 for the forged checks and assented to a requirement to pay the $2,500 for damage to the vehicles. He did object to

inclusion for restitution of any travel expenses his brother-in-law had incurred in returning to Cody from Minnesota, which totalled $1,157.71.[4] He was to make his first payment of $500, the amount he agreed he could pay, by February 5, 1991. During the period of probation after sentence, he did not make that payment, nor has he ever made any payment, in any sum, at any time.

■ On March 21, 1991, a petition to revoke Badura's probation was filed in the district court. By order entered on November 7, 1991, Badura's probation was revoked and his prison sentence of one to three years was activated. Badura contends the trial court failed to adhere to the statutory requirements for imposing a sentence which includes a restitution order. Wyoming statutes require that a sentence incorporating restitution be accomplished in accordance with those statutes. Wyo. Stat. § 7–9–101 through § 7–9–115 (Supp. 1991).[5] Badura correctly points out that Wyo.Stat. § 7–9–104 requires the trial

2. Wyo.Stat. § 6–3–602 (1988) states:

(a) A person is guilty of forgery if, with intent to defraud, he:

\* \* \* \* \* \*

(ii) Makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or

(iii) Utters any writing which he knows to be forged in a manner specified in paragraphs (i) or (ii) of this subsection.

(b) Except as provided in subsection (c) of this section, forgery is a felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both.

3. Badura pled guilty without a plea bargain, but had been carefully advised in advance by the trial court in case of a guilty plea that he "would be required to pay back any damages that might have been incurred by the victim. That's called restitution." Additionally, he was given specific warning during sentencing about the likelihood of probation revocation if he failed to make restitution.

4. The amount of the travel expenses was not contested. Objection was taken to the propriety

of its inclusion for restitution on a legal basis. The trial court rejected the legal objection and appeal was not taken from the resulting judgment and sentence. Likewise, no W.R.Cr.P. 36 motion (now Rule 35) for correction of an illegal sentence was ever made. *Duffy v. State,* 730 P.2d 754, 758 (Wyo.1986); *Price v. State,* 716 P.2d 324 (Wyo.1986). *Cf. Seaton v. State,* 811 P.2d 276 (Wyo.1991). At the sentencing hearing, the prosecuting attorney stated:

As to the conditions of probation, I think it's imperative that, first and foremost, he be ordered to pay restitution as rapidly as possible. His testimony indicates he will be able to pay five hundred dollars a month. I would ask that the Court incorporate that into its order.

Badura's counsel responded:

Your Honor, just in regards to the amount of restitution. As already been stated Mr. Badura does not object to the restitution amounts for the vehicles, checks and services charges.

5. Many of the statutes in Title 7, Chapter 9, were amended effective July 1, 1991, after Badura was sentenced, but before his probation was revoked. Badura claims the amendments should have a retroactive application which is beneficial to him. Our review of the statutes convinces us the applicable portions of the statutes he relies on were not changed by the 1991 amendments.

court to have the probation officer and the defendant prepare a restitution plan. The record does not categorically demonstrate that this sort of restitution planning was done, but the presentence report does show that restitution was discussed and the transcripts demonstrate that appellant agreed at sentencing that he could and would make the monthly restitution [6] payments which were ordered in the sentence. Essentially, Badura claims that if this planning process had been observed more rigorously, it would have been clear to the probation officer, as well as to the trial court, that he did not have the ability to pay $500 a month in restitution.

The record reflects the in-court examination provided a reasonable, factual basis about the accused's financial circumstances which was sustained by his insistence of willingness and ability to pay the restitution of at least $500 per month as he itemized his actual and expected income. *Dreiman v. State*, 825 P.2d 758 (Wyo.1992); *Seaton v. State*, 811 P.2d 276 (Wyo.1991). It was his offer. *Asch v. State*, 784 P.2d 235 (Wyo.1989). Moreover, the trial court's decision to revoke was not based on the failure to have paid the full amount of the total restitution or even full payments for the monthly installments required. Rather, it was based on Badura's failure to pay anything at all. The trial court took into account that following sentence, Badura had neither sought nor obtained employment—whether part-time or full-time; whether manual, menial or professional— at a time when jobs were readily available. Indeed, the trial court was very patient in continuing the proceedings so that Badura could show some sincere effort to pay *something* toward the restitution. The trial court judge granted continuances, in part because Badura simply did not show up for some hearings and in part to allow him time to become employed. In sum, fourteen months after Badura was first aware he would be making restitution, nothing had been paid. We hold the trial court satisfactorily observed the governing statutes in requiring Badura to pay restitution. *Kahlsdorf v. State*, 823 P.2d 1184, 1191–95 (Wyo.1991); and *see generally* Annotation, *Ability to Pay as Necessary Consideration in Conditioning Probation or Suspended Sentence Upon Reparation or Restitution*, 73 A.L.R.3d 1240 (1976).

Badura also contends the trial court erred in not determining the actual pecuniary damages suffered by the Pulczinskis as required by Wyo.Stat. § 7–9–103(a). The objection is solely directed to the $1,157.71 travel expense incurred by his in-law after he forged the checks and wrecked the cars. As appellant, he did not and does not question the total amount of restitution for the forged checks and the overdrafts. He considered the $2,500 for damage to the cars to be too high, but accepted it as suitable. Badura argued he should not have to pay his brother-in-law's travel expenses to return to Wyoming from Minnesota to take care of problems caused by his conduct, because they would have had to have returned in any event to transport the remainder of their property to Minnesota. The trial court then told him at sentencing:

> If you wish to challenge the amount of the restitution, you may petition the Court for a hearing to reconsider the amount of restitution, and if such a hearing is held, of course, it will be necessary for the State to come forward with evidence to document the total requested, and if you dispute it, you ought to be in a position to offer your evidence in response. Otherwise that will be the exact amount of restitution, and regardless of whether a petition to reconsider that amount is filed or not, you are ordered to begin making payments on restitution in the amount of not less than five hundred dollars a month, with the first payment to be due and payable on or before February 5th.

No request for such hearing was made. *Cf. State v. Lewus*, 170 Ariz. 412, 825 P.2d 471 (1992). No W.R.Cr.P. 36 (now W.R.Cr.P. 35) objection was raised to the

---

**6.** An interesting concept is offered to require the trial court to examine and conclude that the accused is exaggerating his capacity to make restitution and perhaps intentionally misstates his ability to repay damages caused. We would conclude that the trial court is entitled to rely on the validity of restitutional opportunity and agreement made by the accused.

sentence; and no restitution, including a victim's compensation $50 deposit payment, was ever made. *See* W.R.Cr.P. 35 (formerly W.R.Cr.P. 36). *Kahlsdorf*, 823 P.2d at 1193. We need not definitively decide here if the total figure is justifiable or if the travel expenses were a proper subject for restitution. The defendant must challenge the amount of restitution determined at sentencing (or within the time permitted by the rules after sentencing) or the amount is fixed as res judicata, not subject to attack at a probation revocation hearing. *Sanderson v. State*, 649 P.2d 677 (Wyo.1982). *See generally* Arthur W. Campbell, *Law of Sentencing* § 3:3 (2d ed. 1991).

The trial court ordered restitution in the amount of $7,304.82 and the record clearly reflects that Badura never paid anything. Revocation was validated because Badura made no demonstrable effort with more than adequate post-sentence notices to pay the court-ordered restitution. As the trial court said: "[Y]ou've gone for all of this time without having made even a single payment at all, that is quite frankly an insincerity. I'm not sure that you made very much of an effort because I think you could have made some of it in that much time." We agree with the trial court that appellant's failure to pay anything toward the required restitution was willful and a legitimate reason for revocation of probation. *Kahlsdorf*, 823 P.2d at 1195.[7] *Seaton*, 811 P.2d at 280, is not precisely comparable, because in that case, no installment payment arrangement had been established in any fashion. *See also Dreiman*, 825 P.2d 758.

Affirmed.

---

**7.** Badura was invited to explain at the revocation hearing why no restitution had been made. If he had a defense of inability to pay, it simply was not argued or justified by his opportunity to provide defensive testimony. He declined to make any statement, which left the trial court without any realistic alternative except to revoke based on the obvious and admitted violation of the probationary sentence about which no defense or excuse was presented. The subject was covered by Badura's counsel at the trial court session by statement to the trial court and his client:

> THE COURT: Do you have witnesses to call, Mr. [defense counsel]?
>
> [DEFENSE COUNSEL]: No, Your Honor. At this time I think it appropriate to advise the Court that I have discussed this proceeding with Mr. Badura prior to being in Court to day [sic]. I have explained to him that he would be given the opportunity to take the stand and testify, to make any statement that he wishes to make, to address any issues that he wants to address.
>
> He indicated to me at that time that he did not wish to take the stand today or to make any statement. I, of course, could give Mr. Badura that opportunity again now that we are in Court to do that if he so desires.
>
> I guess if it's his choice not to take the stand or make any statement, I just would like that to be made of record.

The trial court, at a later stage, stated:

> THE COURT: James Lawrence Badura, anything else you would like to say then before sentence is imposed against you in the case?
>
> MR. BADURA: No, there is not.

> THE COURT: Will you stand and face the Court.
>
> The Court will find for the record, actually already has found, that Mr. Badura was placed on probation by order of this Court and that there were some violations of the probation order, one of them being his failure to make restitution, and, if I recall correctly, a failure to make any restitution whatsoever.
>
> Is that right, Mr. Badura, you never paid the first dollar, did you?
>
> MR. BADURA: No, I did not.

Sufficiency of the factual basis for revocation is not an issue presented on appeal and, in this case, the fact that no restitution had been paid, contrary to the terms of the sentence, was not only established, but also admitted. Why Badura did not elect to attempt a defense based on his obviously failed business enterprise is not discernible within this record. We do not ignore the Fourteenth Amendment guaranteed principle that a sentencing court cannot properly revoke a defendant's probation for failure to make restitution where ability to pay was not found to have existed, but once the State showed a failure to pay as ordered, the burden shifted to the defendant to show an inability to pay in accordance with the order of the restitution plan. That potential, affirmative defense was neither presented to the trial court nor now briefed or argued in this appeal. *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); *People v. Cookson*, 54 Cal.3d 1091, 2 Cal.Rptr.2d 176, 820 P.2d 278, 282 (1991); *State v. Parsons*, 104 N.M. 123, 717 P.2d 99 (1986). *See also People v. Thomas*, 146 Cal.App.3d 542, 194 Cal.Rptr. 252 (1983).